IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 12-3595

---

WILLIE SMITH,
Appellant

v.

JOHN KERESTES, Superintendent, et al.,
Appellees

---

Appeal from an Order entered in the
United States District Court for the Western
District of Pennsylvania at No. 2:10-cv-00048

---

BRIEF FOR APPELLANT

---

1500 Liberty Center                    LISA B. FREELAND
1001 Liberty Avenue                    Federal Public Defender
Pittsburgh, PA 15222
(412) 644-6565                         Attorney for Appellant,
                                       Willie Smith

# TABLE OF CONTENTS

Table of Authorities ........................................................................ iii

Statement of Jurisdiction............................................................... 1

Statement of the Issues................................................................. 2

Statement of the Case.................................................................... 4

Statement of Related Cases and Proceedings ............................. 20

Summary of the Argument........................................................... 21

Argument:

      I.     TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
           COMMUNICATE A PLEA OFFER THAT WOULD HAVE
           RESULTED IN A SHORTER SENTENCE THAN THE ONE
           WILLIE SMITH RECEIVED AFTER TRIAL ..................... 22

      II.    WILLIE SMITH IS ENTITLED TO FEDERAL REVIEW OF
           THE MERITS OF HIS CLAIM THAT TRIAL COUNSEL
           WAS INEFFECTIVE FOR FAILING TO COMMUNICATE
           A PLEA OFFER THAT WOULD HAVE RESULTED IN A
           SHORTER SENTENCE THAN THE ONE WILLIE SMITH
           RECEIVED AFTER TRIAL WHERE THE CLAIM WAS
           PROCEDURALLY DEFAULTED AS A RESULT OF FIRST
           PCRA COUNSEL'S INEFFECTIVE ASSISTANCE........... 27

Conclusion ................................................................................... 33

Certificate of Membership in Bar ............................................... 34

Certificate Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c) .. 34

i

Certificate of Identical Text ........................................................... 34

Certificate of Virus Check .......................................................... 35

Volume I of Appendix ............................................................. App 1-17

Certificate of Service ................................................................ 36

# TABLE OF AUTHORITIES

## <u>CASES</u>:

Coleman v. Thompson
    501 U.S. 722 (1991)..................................................................... 28
Douglas v. California
    372 U.S. 353 (1963)..................................................................... 28
Evitts v. Lucey
    469 U.S. 387 (1985)..................................................................... 28
Lafler v. Cooper
    132 S.Ct. 1376 (2012)................................................................. 22
Martinez v. Ryan
    132 S.Ct. 1309 (2012)............................................................ 21, 28
Missouri v. Frye
    132 S.Ct. 1399 (2012)............................................................ 22, 25
Strickland v. Washington
    466 U.S. 668 (1984)........................................................ 22, 24, 29
Trevino v. Thaler
    133 S.Ct 1911 (2013)................................................................. 28
Boyd v. Waymart
    579 F.3d 330 (3d Cir. 2009) ...................................................... 26
Commonwealth v. Grant
    570 Pa. 48 (2002)....................................................................... 29
Cox v. Horn
    757 F.3d 113 (3d Cir. 2014) ...................................................... 28
Holloway v. Horn
    355 F.3d 707 (3d Cir.2004) ....................................................... 27
Johnson v. Folino
    705 F.3d 117 (3d Cir. 2013) ...................................................... 27
Johnson v. Pinchak
    392 F.3d 551 (3d Cir.2004) ....................................................... 27
Lambert v. Beard
    633 F.3d 126 (3d Cir. 2011) .................................................... 2, 3
Lambert v. Blackwell
    387 F.3d 210 (3d Cir.2004) ....................................................... 24
Lewis v. Horn
    581 F.3d 92 (3d Cir. 2009) ........................................................ 24

Simmons v. Beard
    590 F.3d 223 (3d Cir. 2009) ............................................................ 2, 3
Taylor v. Horn
    504 F.3d at 429 ................................................................................ 24

## **STATUTES:**

28 U.S.C. § 1291 ................................................................................... 1
28 U.S.C. § 2253 ................................................................................... 1
28 U.S.C. § 2254 ............................................................................... 1, 17
28 U.S.C. § 2254(e)(1) ......................................................................... 24
18 Pa.C.S. § 1102(a)(1) ....................................................................... 26
18 Pa.C.S. § 1102(d) ....................................................................... 26, 31
42 Pa.C.S. § 9541 ............................................................................ 5, 21
42 Pa.C.S. § 9545(b)(2) ....................................................................... 27
42 Pa.C.S. § 9756 ................................................................................ 23

U.S. CONST. amend. VI ................................................................. passim

# STATEMENT OF JURISDICTION

This is an appeal from a judgment denying relief under 28 U.S.C. § 2254 entered in the United States District Court for the Western District of Pennsylvania at Civil Action No. 10-cv-00048.

The district court had subject matter jurisdiction under 28 U.S.C. § 2254 and this Court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.  The district court denied Willie Smith's Petition for Writ of Habeas Corpus and a certificate of appealability on August 13, 2012.

Thereafter, Mr. Smith timely filed a Notice of Appeal.  By Order dated April 18, 2013, this Court granted in part and denied in part Mr. Smith's request for a certificate of appealability.  App. 16-17.

**STATEMENT OF THE ISSUES**

ISSUE I.    WAS WILLIE SMITH DENIED HIS SIXTH AMENDMENT RIGHT
TO THE EFFECTIVE ASSISTANCE OF COUSNEL WHERE TRIAL
COUNSEL WAS INEFFECTIVE FOR FAILING TO
COMMUNICATE AN ALLEGED PLEA OFFER THAT WOULD
HAVE RESULTED IN A SHORTER SENTENCE THAN THE ONE
HE RECEIVED AFTER TRIAL?

Preservation of the issue and ruling on the issues

Mr. Smith raised the issue in his Petition for Writ of Habeas Corpus, and
Memorandum of Law in Support of Original Habeas Corpus Petition.  See District
Court Docket Entry Nos. 1, 4, 23.  This Court granted a Certificate of
Appealability on the issue.  App. 16-17.

Standard of review

This Court exercises plenary review over the decision of the district court, as
the court did not hold an evidentiary hearing.  See Lambert v. Beard, 633 F.3d 126,
130 (3d Cir. 2011) (citing Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)).

ISSUE II:    IS WILLIE SMITH ENTITLED TO FEDERAL REVIEW OF THE
MERITS OF HIS CLAIM THAT TRIAL COUNSEL WAS
INEFFECTIVE FOR FAILING TO COMMUNICATE A PLEA
OFFER THAT WOULD HAVE RESULTED IN A SHORTER
SENTENCE THAN THE ONE WILLIE SMITH RECEIVED
AFTER TRIAL WHERE THE CLAIM WAS PROCEDURALLY
DEFAULTED AS A RESULT OF FIRST PCRA COUNSEL'S
INEFFECTIVE ASSISTANCE?

Preservation of the issue and ruling on the issues

Mr. Smith argued that he could demonstrate cause and prejudice in his pro
se Motion to Modify, Alter or Rescind Judgment Dismissing Habeas Petition,
which was filed following the district court's Memorandum Opinion and Order

denying his habeas petition and finding the claim at issue here procedurally defaulted.  <u>See</u> District Court Docket Entry No. 32.

Although the Commonwealth argued that the claim was procedurally defaulted in its Answer to the <u>pro</u> <u>se</u> habeas petition, the Answer was filed on Tuesday, August 6, 2013, and the district court issued its Memorandum Opinion one week later on Tuesday, August 13, 2013.  The record does not reflect whether Mr. Smith received the Commonwealth's Answer before a decision was rendered. See District Court Docket Entry Nos. 22, 24.

<u>Standard of review</u>

This Court exercises plenary review over the decision of the district court, as the court did not hold an evidentiary hearing.  <u>See</u> <u>Lambert v. Beard</u>, 633 F.3d 126, 130 (3d Cir. 2011) (citing <u>Simmons v. Beard</u>, 590 F.3d 223, 231 (3d Cir. 2009)).

### STATEMENT OF THE CASE

When Willie Smith was charged with fatally shooting Torrance Respress, Smith admitted to the shooting.  App. 194.  He testified, however, that he never intended to shoot Mr. Respress; rather, he meant only to hit him with the gun and the gun accidentally discharged.  App. 194.  At trial, there was evidence that Mr. Smith was intoxicated.  App. 98.

During deliberations, the jury asked a question about the effect of alcohol and drugs on Mr. Smith's intent.  App. 98.  Specifically, the jury asked, "Does state of mind affect first degree murder . . . that is, drugs and alcohol.  App. 98. Trial counsel, Thomas Leslie, Esquire, decided not to seek an instruction on voluntary intoxication because it was inconsistent with Mr. Smith's testimony that the shooting was an accident.  App. 189-90.

Ultimately, the jury convicted Mr. Smith of first degree murder.  He was sentenced to life imprisonment.  See June 21, 2004, Transcript of Jury Trial at 175; September 3, 2004, Transcript of Sentencing Hearing at 10.

Direct Appeal

Mr. Leslie represented Mr. Smith on appeal and presented three claims: (1) that the jury questionnaire inappropriately failed to ask if a prospective juror could follow the law regarding the testimony of police officers; (2) that that the trial

court erred by admitting autopsy photos of the victim that were not probative of

Mr. Smith's intent; and (3) that the verdict was against the weight of the evidence

where the only Commonwealth witnesses who testified as to the defendant's intent

provided inconsistent testimony.  See November 23, 2005, Opinion at 1.  On

November 23, 2005, the Pennsylvania Superior Court affirmed Mr. Smith's

conviction and sentence.  Id.  No petition for allowance of appeal was filed.

First PCRA Proceedings

On May 24, 2006, Mr. Smith filed a pro se motion for post-conviction

collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S.

§ 9541 et seq. (hereinafter "PCRA").   App. 27-42.  In his petition, Mr. Smith

raised the following issues: (1) whether trial/appellate counsel (Mr. Leslie) was

constitutionally ineffective for failing to conduct a proper or adequate pre-trial

investigation to uncover evidence to support a defense theory of accidental

shooting; failing to preserve for appellate review a challenge to the weight of the

evidence to support the conviction; failing to advise him of the importance of

character testimony and in failing to call numerous available character witnesses

on Mr. Smith's behalf; and failing to object to the Commonwealth's unlawful use

of peremptory strikes to exclude qualified African Americans from the jury; (2)

whether the Commonwealth used its peremptory strikes to exclude qualified

African Americans from the jury in violation of the equal protection clause and

Batson v. Kentucky, 476 U.S. 79 (1986); and(3) whether the jury instruction on

first-degree murder violated Mr. Smith's right to due process under the United

States and Pennsylvania Constitutions.  App. 27-42.

The court appointed Ross Smith, Esquire, to represent Mr. Smith.  Counsel

Smith filed an amended PCRA petition raising Mr. Smith's Batson claim and his

ineffective assistance of counsel claim, largely echoing Mr. Smith's allegations in

his pro se petition.  App. 43-52.

On November 2, 2006, the PCRA court held a hearing on Mr. Smith's

petition.  At the hearing, Mr. Smith testified that the jury pool was not

"representative" of his race because it did not include any African Americans.

App. 57.  Consequently, he was tried by an all-white jury.  App. 57.  However, Mr.

Smith also conceded that there were no African American jurors on the jury panel,

and thus none were excluded by the prosecutor's peremptory challenges.  App. 59-

61.  PCRA counsel presented an official court document showing that 3.83 percent

of the jury pool called to court for the trial term was African American.  App. 74.

Mr. Leslie also testified at the hearing.  With respect to Mr. Smith's claim

that he had been ineffective, Mr. Leslie testified that he made few objections at

trial because "it may been the cleanest trial [he] was ever involved as far as

6

objections were concerned . . . essentially, the prosecution presented a rather straightforward case and did not involve anything that I felt was objectionable other than the photographs and some minor things like that." App. 69. Regarding the character evidence, Mr. Leslie testified that he did not use Mr. Smith's proposed character witnesses because their testimony would have opened the door to Mr. Smith's prior assault conviction. Ap. 70-71.

On December 20, 2006, the PCRA court denied Mr. Smith's petition. App. 85. The court found Mr. Smith's Batson claim unavailing in light of the fact that the jury panel from which the jury was selected contained no African American jurors. App. 80-81. The court found Mr. Smith's ineffective assistance of counsel claims meritless based on Mr. Smith's inability to demonstrate what helpful information a "proper" investigation would have uncovered, App. 82-83, and on Mr. Leslie's testimony that he did not call character witnesses because he did not want to open the door to admission of Mr. Smith's prior conviction. App. 83.

Mr. Smith sought new counsel for an appeal or, in the alternative, permission to proceed pro se. See March, 27, 2007, Petition Seeking Appointment of New Counsel or Permission to Act as Counsel on Appeal. The Superior Court granted Mr. Smith's motion, and remanded his case to the PCRA court to either

7

appoint new counsel or determine if Mr. Smith's request to proceed pro se was

knowing, voluntary, and intelligent.  See March 29, 2007 Order.

The PCRA court appointed Tara Howey, Esquire, to represent Mr. Smith on

appeal.  See April 5, 2007, Order.  Ms. Howey filed a Turner/Finley brief, claiming

that Mr. Smith's appeal from the denial of his PCRA petition was meritless and

requesting to withdraw as counsel in his case.  See February 20, 2008 Non-

Precedential Opinion at 1.   Mr. Smith filed a pro se brief, arguing that trial counsel

was ineffective for failing to request a jury instruction on the effect of voluntary

intoxication, and that his PCRA counsel was ineffective for failing to raise such a

claim.  App. 100.  He also argued that trial counsel was ineffective for failing to

challenge his trial by an all-white jury.  App. 103.

The Superior Court disagreed with Ms. Howey's conclusion that Mr.

Smith's appellate claims were meritless.  App. 90.  Specifically, the court found

there was arguable merit to Mr. Smith's claim that his lawyer should have

requested a jury instruction on the effect of voluntary intoxication, and that the

record was not adequately developed in the PCRA proceedings.  App. 99-101.  The

court also found that Mr. Smith's claim that his lawyers did not adequately pursue

a claim that the jury venire did not represent a fair cross-section of the community

deserved further factual development and consideration.  App. 104-105.  The

8

Superior Court vacated the order denying PCRA relief and remanded the case to the PCRA court for further proceedings, including the appointment of new counsel to amend Mr. Smith's PCRA petition to include these ineffective assistance of counsel claims.  App. 102.

On remand, Gerald Iwanejko, Esquire, was appointed to represent Mr. Smith.  See March 19, 2008, Order.  Mr. Iwanejko filed an amended PCRA petition.[1]  App. 107-117.  The amended petition included a claim that trial counsel was ineffective because he (1) failed to request a jury instruction concerning the effect of intoxication on specific intent as it relates to the degree of murder; (2) did not pursue a claim that the jury venire unlawfully excluded a representative cross-section of the community; and (3) failed to properly question Pennsylvania State Police Trooper Robert Hagins about a possible malfunction of the gun involved in the shooting.  App. 109-111.  The petition also included a claim that prior PCRA counsel was ineffective for failing to raise this issue.  App. 112.

The PCRA court held a hearing on July 21, 2008, and again heard testimony from Mr. Smith and Mr. Leslie.  App. 118-180.  The jury selection issue and the

---

[1] While Mr. Iwanejko and the PCRA court refer to this petition as Mr. Smith's "Second Amended" PCRA petition, it was in fact an amendment to his first PCRA petition.

9

possible intoxication defense were the focus of Mr. Smith's testimony.  App. 126-

131.  However, on cross-examination, the prosecutor asked Mr. Smith a number of

questions about a plea offer made prior to trial:

PROSECUTOR:    Okay. Do you remember [Mr. Leslie] asking you about a
               guilty plea offer we had offered you a plea of guilty to
               third degree murder?

MR. SMITH:     No. He never brought that to my attention. He never said
               anything to me about a plea, any kind of plea.

PROSECUTOR:    He didn't ask you about that –

MR. SMITH:     No.

PROSECUTOR:    – before trial?

MR. SMITH:     No.

App. 131-132.

Later, the prosecutor asked Mr. Smith if he told Mr. Leslie that he could not

plead guilty to a greater charge than manslaughter because it would result in

effectively a life sentence for him, given his age.  App. 133.  Mr. Smith denied

making that statement.  App. 133.

Mr. Leslie testified that Mr. Smith directed him not to request a jury

instruction on intoxication.  App. 143.  Mr. Leslie explained that he thought a

defense theory of voluntary intoxication would have been the most logical trial

strategy, although it would have only reduced Mr. Smith's charge to third-degree

murder.  App. 144.  According to Mr. Leslie, he conducted a "substantial amount of research on voluntary intoxication" and retained a forensic psychologist to examine Mr. Smith for purposes of raising the intoxication issue.  App. 144.

Mr. Leslie stated that did not pursue the intoxication defense because Mr. Smith told him that he did not mean to shoot the victim, but only to strike him with the gun.  Mr. Smith planned to – and ultimately did – testify that it was an accident.  App. 144.  As a result, Mr. Leslie felt that he could not raise an intoxication defense because it would have been inconsistent with Mr. Smith's claim that he only intended to strike the victim with the gun, not shoot him.  App. 144.

Mr. Leslie also testified that the Commonwealth had offered a plea to third-degree murder:

> I think the offer from the Commonwealth was eight years, but I couldn't find the exact amount of time, and Mr. Smith said to me I'm 63 years old, that's a life sentence, it was an accident, that's what I want to go with, and I explained to him and before – just before we went to trial, I went over to the jail and talked to him in the attorney-client room, and we had the specific discussion and I tried to find my list of things, but apparently it wasn't in the file, list of things that we needed to talk about, and foremost among those was the fact that he really should take the plea to third degree murder.
>
> And the reason I said that was because, you know, it is – it just – it is either first degree or third degree.  If it is an accident, it is manslaughter.  That's a much better sentence, and Willie kept insisting that it was an accident, and he wasn't going to plead guilty to

11

anything other than a manslaughter charge, and when we went to trial
– I don't think I went to trial because I thought this was fun, but a plea
to third degree would have been a very reasonable way out of this, but
I could not convince Willie to take that plea to third degree.

App. 145. Mr. Leslie testified that the offer was "still on the table" through jury

deliberations. App. 146.

Turning to the jury note about the effect of intoxication, Mr. Leslie testified

that he told Mr. Smith they could request an instruction on intoxication, and that

such an instruction would all but ensure a conviction of third-degree murder rather

than manslaughter. App. 144-147. (Mr. Leslie: "I said, well, . . . the theory for

manslaughter isn't going to fly if you give the jury third degree, and it sounds like

that's what they are looking for. Their choices right now are first degree or

manslaughter, but I said I could almost guarantee you that if the judge instructs

them on this, we'll get third degree.").

The prosecutor asked Mr. Leslie if he specifically asked Mr. Smith if he

wanted to request the jury instruction on intoxication, to which Mr. Leslie replied:

Well, I don't know if I said it in exactly those terms. Whatever I said
got the response, it was an accident, and I – I don't want third degree.
We had an offer for a plea. We didn't have to have a jury. We could
have taken the plea right then and there.

App. 151.  At that point, Mr. Smith interjected, "I never heard the offer before for a

plea.  You never said anything about an offer for a plea."  App. 151.  Mr. Leslie

continued:

> it is difficult to imagine that I wasn't attempting to get a plea on third
> degree here or at trial with third degree.  I know the offer for third
> degree happened early on in the case, and it remained in effect right
> until the time the jury had a verdict, and I did convey it to Mr. Smith.

App. 151-152.  Later in his testimony, Mr. Leslie again touched on the issue of the

plea offer:

PROSECUTOR:    You discussed with Mr. Smith the length of the sentences
               first, third and involuntary manslaughter?

MR. LESLIE:    I believe the prosecution had made an offer. My
               recollection is it was eight years. It may have been ten,
               but, for some reason, I think it was eight.

PROSECUTOR:    On what charge?

MR. LESLIE:    On third degree. Manslaughter, I figured it would --
               there's no significant prior criminal record, so I
               anticipated it would be relatively short term, maybe a
               couple of years.

App. 171.

On November 14, 2008, the PCRA court denied Mr. Smith's petition.  App.

181-193.  With respect to Mr. Leslie's testimony regarding his decision not to

request that the jury be instructed on the effect of intoxication, the PCRA court

made the following findings:

13

> Trial counsel testified that he did a substantial amount of research on voluntary intoxication because he viewed that as the best way to handle this case, but that the Defendant was persistent in his claim that the killing was an accident.  The Commonwealth offered the Defendant a plea to third degree murder and trial counsel presented the offer to the Defendant and explained to him that this was a reasonable plea under the circumstances, but the Defendant planned to testify at trial that he only intended to strike the victim with the gun and it accidentally went off in the process.

App. 188.  Mr. Smith appealed the decision, and the Superior Court affirmed the PCRA court's ruling.  App. 197-198.  While noting that Mr. Smith and Mr. Leslie's testimony "differed in several important respects," the court reasoned that it could not "disturb the PCRA court's credibility determinations."  App. 198.  Mr. Smith filed a petition for allowance of appeal before the Pennsylvania Supreme Court, and it was denied on October 22, 2009.  See October 22, 2009, Order.

Second PCRA Proceedings

On December 10, 2009, Mr. Smith filed a second pro se PCRA petition.  He argued that the Commonwealth's plea offer consisted newly discovered evidence entitling him to a new trial, and claimed he was denied his Sixth Amendment right to counsel because his lawyer failed to consult, discuss, notify or inform him of the Commonwealth's plea offer to third-degree murder.  App. 208-11, 218-20.

Another lawyer, Laura Crable, Esquire, was assigned to represent Mr. Smith in connection with his second PCRA.  See February 10, 2010, Order.  The

14

Commonwealth moved to dismiss the petition on procedural grounds, arguing that (1) Mr. Smith could not meet the standard applicable to subsequent petitions; (2) the petition was untimely; and (3) the plea offer claim was both waived and previously litigated.  See Commonwealth's Reply to 2009 Motion for P.C.C.R. Relief, dated February 11, 2010.

On December 1, 2010, the PCRA court conducted a hearing.  Mr. Smith testified that at the time of trial, Mr. Leslie did not discuss potential plea offers with him.  App. 228.  He said he first learned about the plea offer during the July 21, 2008, hearing on his first PCRA petition.  App. 228-229.  Mr. Smith testified that, had he known of the plea offer, he would have considered it.  App. 229.  He added:  I could have fought this with a plea bargain.  I could have fought this better that just a life sentence."  App. 229.

On April 23, 2012, the PCRA court denied Mr. Smith's second PCRA petition.  The court held that Mr. Smith's petition was untimely because he did not file it within 60 days of learning, at the July 21, 2008 hearing, that the Commonwealth had offered him a plea to third degree murder.  App. 239.  The court also found that Mr. Smith's PCRA petition was a subsequent petition, and did not meet the standard to allow for consideration of such petitions.  App. 240. In the court's view, Mr. Smith's case did not involve a miscarriage of justice

15

because, by demonstrating his willingness to accept a plea to third-degree murder,

Mr. Smith now acknowledged his criminal responsibility for causing the victim's

death.  App. 241.

The PCRA court agreed with the Commonwealth that Mr. Smith's claim had

been waived due to his failure to raise it in his first PCRA petition, which was still

before the PCRA court when he learned about the plea offer.  App. 243.  Oddly,

the court also found the claim was previously litigated:

> Here, the Defendant has raised in the pending PCRA petition an issue
> that was implicit in the prior petition in which the Court accepted the
> testimony of trial counsel and rejected that of the defendant where
> their testimony conflicted.  At the July 21, 2008 hearing trial counsel
> testified that he discussed with the defendant a plea of guilty to
> murder of the third degree and defendant testified that there was no
> such discussion.  More significantly, trial counsel discussed a
> voluntary intoxication instruction which could have lowered the
> degree of guilt to murder of the third degree and defendant
> specifically stated that he did not want murder of the third degree.
> This Court has specifically found this testimony to be true in finding
> that Defendant knowingly agreed that a voluntary intoxication
> instruction would not be requested, and therefore trial counsel was not
> ineffective.

App. 244-245.  Finally, the court noted the claim lacked merit and credibility.

App. 247.

Mr. Smith filed a notice of appeal.  Mr. Smith was appointed a new lawyer,

James Papa, to represent him on appeal.  <u>See</u> November 6, 2012, Order.  Mr. Papa

filed a brief on behalf of Mr. Smith, raising four issues: (1) whether the PCRA

16

court erred in finding no merit to Mr. Smith's claims of ineffective assistance of

counsel; (2) whether the PCRA court erred or abused its discretion by resolving

issues of credibility in favor of Mr. Leslie and against Mr. Smith; (3) whether the

PCRA court's finding that Mr. Smith's claim was untimely and waived was in

error; and (4) whether the PCRA court erred in refusing to order a new trial or that

the plea offer be reinstated.  App. 250-251.

The Superior Court affirmed the PCRA court's denial of Mr. Smith's

petition, finding that the petition was untimely, and that the PCRA court was

jurisdiction to entertain it.  App. 253.  The Supreme Court of Pennsylvania denied

Mr. Smith's petition for allowance of appeal.  See February 19, 2014, Order.

Federal Habeas Proceedings

Prior to the conclusion of his PCRA litigation, Mr. Smith filed a petition

pursuant to 28 U.S.C. § 2254 in the district court.[2]  In his federal petition, Mr.

Smith sought relief on the following grounds: (1) that trial counsel was

constitutionally ineffective in failing to request a jury instruction on

---

[2]  The federal habeas proceedings were stayed pending Mr. Smith's exhaustion of
state court remedies.  After the PCRA court denied Mr. Smith's second PCRA
petition, but before the appeal, the district court lifted the stay and directed the
Commonwealth to file an Answer to the petition.  See May 17, 2012, Order.

17

intoxication/specific intent; (2) that trial counsel was constitutionally ineffective for failing to properly question and/or retain a gun ballistics expert witness and for failing to properly question Trooper Hagins about a possible malfunction of the involved weapon; (3) that trial counsel was constitutionally ineffective for failing to challenge trial by all-white jury in violation of the U.S. Constitution; and (4) that trial counsel was constitutionally ineffective for failing for inform petitioner about the Commonwealth's plea offer to third degree murder which the petitioner only learned about at his post-conviction hearing.  See Petition for Writ of Habeas Corpus, District Court Docket Entry Nos. 1, 4.

On August 13, 2012, the district court denied Mr. Smith's habeas petition. The court found he had "exhausted the available state court remedies on his first three issues and that they [were] properly before [the] court for consideration[,]" and rejected the claims on the merits.  App. 5, 8-9.  With respect to Mr. Smith's fourth claim – relating to the plea offer – the district court found the claim procedurally barred due to the PCRA court's determination that the claim was untimely.  It also found Mr. Smith had made no showing of cause and prejudice, or of a fundamental miscarriage of justice, to overcome the default.  App. 6.  The court denied a certificate of appealability as to all claims.  App. 9.

18

Mr. Smith timely filed a notice of appeal, App. 11-15, and thereafter sought a certificate of appealability. This Court granted in part and denied in part his request. App. 16-17. Specifically, the Court granted a certificate of appealability on Mr. Smith's claim that trial counsel was ineffective for failing to communicate an alleged plea offer that would have resulted in a shorter sentence than the one he received after trial. App. 16.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Counsel is aware of no related cases.

## SUMMARY OF THE ARGUMENT

Willie Smith was denied his Sixth Amendment right to counsel because trial counsel failed to communicate and explain the details of a Commonwealth plea offer that would have resulted in a shorter sentence than the Mr. Smith received after trial.

The facts surrounding Mr. Smith's claim were first revealed during an evidentiary hearing on his first petition under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq.  Upon learning the facts, Mr. Smith's first PCRA counsel failed to appreciate their significance and amend Mr. Smith's pending PCRA petition to include a claim related to the plea offer.  Mr. Smith's later attempt to have the issue considered by the state courts was deemed time-barred, and the issue is procedurally defaulted.

Mr. Smith overcomes the default, however, under the test set forth in Martinez v. Ryan, 132 S.Ct. 1309 (2012), because Mr. Smith's Sixth Amendment claim is substantial and the default was caused by ineffective representation during an initial-review collateral proceeding.

**ARGUMENT**

## I. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO COMMUNICATE A PLEA OFFER THAT WOULD HAVE RESULTED IN A SHORTER SENTENCE THAN THE ONE WILLIE SMITH RECEIVED AFTER TRIAL.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Missouri v. Frye, 132 S.Ct. 1399, 1386-87 (2012)).  "If a plea bargain has been offered, a defendant has a right to the effective assistance of counsel in considering whether to accept it." Id. at 1387.  "Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland [v. Washington, 466 U.S. 668 (1984)." Frye, 132 S.Ct. at 1405.  A defendant demonstrates prejudice when there is (1) a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) a reasonable probability that the prosecution would not have withdrawn the offer and the trial court would not have refused to accept the plea agreement; and (3) a "reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id. at 1408–10.

22

### A.    Deficient Performance

At the PCRA hearing, trial counsel testified that he communicated an offer for a plea to the lesser offense of third degree murder to Mr. Smith.  However, he could not recall the most critical term of the offer – the sentence.  App. 146, 171. He thought the offer was for 8 years, maybe ten, but was not sure, and he had no notes to confirm his belief or his recollection that he advised Mr. Smith about the offer.[3]  App. 147, 171.  Significantly, trial counsel never claimed to have told Mr. Smith that the offer was for 8 years and/or what an 8-year sentence would mean in the context of Pennsylvania's indeterminate sentencing scheme.[4]  App. 144-45, 171.

Although the PCRA court credited trial counsel's testimony, it found only that a third degree plea offer was communicated.[5]  App.  Even assuming that trial

---

[3] He claimed his computer was stolen from his office, but it remains unexplained why there was nothing in his file (no notes, correspondence, etc.) that would confirm either the details of the offer or that he communicated the offer to Mr. Smith.  App. 147.

[4] The state's indeterminate sentencing scheme is outlined in 42 Pa.C.S. § 9756.

[5] The PCRA court found counsel communicated a third degree offer to Mr. Smith in two of its opinions: (1) in its October 14, 2008, opinion resolving Mr. Smith's first PCRA, which did not include a claim that counsel was ineffective for failing to communicate a plea offer, App.188; and (2) in its April 23, 2012, opinion denying Mr. Smith's second PCRA, which presented the issue for the first time.

23

counsel communicated an offer for a plea to third degree murder to Mr. Smith – a

point Mr. Smith disputes – his testimony fails to establish that he provided Mr.

Smith sufficient information about the offer to permit a knowing and intelligent

decision to accept or reject it.[6]  Counsel's failure falls "below an objective standard

of reasonableness," Strickland, 466 U.S. at 688, and resulted in a denial of Mr.

Smith's right to the effective assistance of competent counsel during plea

negotiations.

---

App. 245-47.  Because Mr. Smith's first PCRA did not raise the issue presently
before this Court, and because his second PCRA was deemed untimely, the PCRA
court never grappled with the issue of what trial counsel communicated to Mr.
Smith and made no relevant findings.

The Superior Court did not comment on the issue at all in the first PCRA
proceedings; nor did it include it in the list of issues it reviewed.  App. 197-97.  In
the second PCRA proceedings, the court found that "the PCRA court was without
jurisdiction to entertain [Mr. Smith's] PCRA petition."  App. 253.

[6] Although the presumption of correctness applies to the PCRA court's finding that
counsel communicated a plea offer to third degree murder, see 28 U.S.C. §
2254(e)(1),  the court's finding does not resolve the question of whether Mr. Smith
was provided with constitutionally effective advice about the offer.  If the Court
disagrees, it should nevertheless remand to provide Mr. Smith an opportunity to
rebut the presumption of correctness, which can be done "based wholly or in part
on evidence outside the state [court] record.'"  Taylor v. Horn, 504 F.3d at 429
(quoting Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir.2004)); see Lewis v.
Horn, 581 F.3d 92, 111 & n.12 (3d Cir. 2009).

24

**B.**    **Prejudice**

Mr. Smith's testimony at the December 1, 2010, hearing – testimony that was credited by the PCRA court and relied upon to find that no miscarriage of justice occurred, App. 241 – establishes a reasonable probability that he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel."[7] Frye, 132 S.Ct, at 1409.  Both the testimony of trial counsel, and the findings of the PCRA court establish that the plea offer remained available up until the time of the verdict, App. 152, 247, thereby satisfying the requirement that "the prosecution would not have withdrawn the offer." Id. at 1410.  There is nothing in the record to support a conclusion that the trial court would have refused to accept the plea agreement; rather, there is every indication in the record that trial counsel and the prosecutor expected a plea to third degree murder would have been accepted by the trial court.[8]

Finally, there can be no dispute that "there is a reasonable probability that the end result of the criminal process would have been more favorable by reason of

_____

[7] Mr. Smith testified that he would have considered the offer and indicated that he would have accepted because he would have received a sentence of less than life. See App. 229.  The PCRA relied on his willingness to plead guilty and acknowledge criminal responsibility to find that the conviction for first degree murder and life sentence did not result in a miscarriage of justice.  App. 241.

a plea to a lesser charge or a sentence of less prison time." Mr. Smith received a

mandatory life sentence following the trial at which he was convicted of first

degree murder. See 18 Pa.C.S. § 1102(a)(1). Whatever the terms of the third

degree plea offer were, they certainly were more favorable that a mandatory life

sentence, as the statutory maximum sentence for third degree murder was, at the

time of Mr. Smith's trial, only 40 years. 18 Pa.C.S. § 1102(d).

In sum, even if Mr. Smith is not given an opportunity to rebut the

presumption of correctness, and the PCRA court's finding that trial counsel

communicated a third degree murder plea offer to Mr. Smith, Mr. Smith's Sixth

Amendment rights nevertheless were violated because counsel failed to

communicate and explain the details of any offer – particularly the sentence he

would receive – such that Mr. Smith could make a knowing and intelligent choice

about whether the accept it or reject it and proceed to trial.

---

[8] Demonstrating a "reasonable probability" is a "relatively low standard, given that it is not necessary to even prove it is 'more likely than not.'" Boyd v. Waymart, 579 F.3d 330, 354 (3d Cir. 2009).

26

## II.  WILLIE SMITH IS ENTITLED TO FEDERAL REVIEW OF THE MERITS OF HIS CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO COMMUNICATE A PLEA OFFER THAT WOULD HAVE RESULTED IN A SHORTER SENTENCE THAN THE ONE WILLIE SMITH RECEIVED AFTER TRIAL WHERE THE CLAIM WAS PROCEDURALLY DEFAULTED AS A RESULT OF FIRST PCRA COUNSEL'S INEFFECTIVE ASSISTANCE.

The Certificate of Appealability issued here recognized that, "[w]hile the District Court held [Mr. Smith's] claim to be procedurally defaulted, the issue is still being litigated in state court."  App. 16.  The Pennsylvania Superior Court ultimately found Mr. Smith second PCRA petition failed to meet the requirements of 42 Pa.C.S. § 9545(b)(2), and was therefore untimely.  App. 253.  As a result, Mr. Smith's claim that he was denied the effective assistance of counsel at the plea bargaining stage is procedurally defaulted.

"Where a state court refuses to consider a [habeas] petitioner's claims because of a violation of state procedural rules, a federal ... court is [generally] barred by the procedural default doctrine from considering the claims."  Johnson v. Folino, 705 F.3d 117, 127 (3d Cir. 2013) (quoting Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir.2004)).  A federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default."  Holloway v. Horn,

27

355 F.3d 707, 715 n. 3 (3d Cir.2004) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  This Court has long recognized

"As Coleman recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default[.]" Martinez v. Ryan, 132 S.Ct. 1309, 1317 (2012) (citing Coleman, 501 U.S. at 754; Evitts v. Lucey, 469 U.S. 387, 396 (1985); Douglas v. California, 372 U.S. 353, 357-58 (1963)).   In Martinez, the Court extended the rationale of Coleman to permit a finding of cause where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.'" Trevino v. Thaler, 133 S.Ct 1911, 1918 (2013) (quoting Martinez, 132 S.Ct.at 1318–1319).

Mr. Smith satisfies all four prongs of the Martinez test.  Initially, his claim that trial counsel was ineffective during the plea bargaining stage is substantial, as this Court's decision to grant a certificate of appealability established.  See Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014) (quoting Martinez, 132 S.Ct. at 1318-20)

28

(A claim is "substantial" if it "'has some merit,' analogous to the substantiality requirement for a certificate of appealability."). In addition, under Pennsylvania law, Mr. Smith's first opportunity to present his claim that trial counsel was ineffective was in his first initial-review collateral proceeding, see Commonwealth v. Grant, 570 Pa. 48, 67 (2002), and it was the ineffectiveness of first PCRA counsel which resulted in the procedural default of his claim.

A straightforward application Strickland demonstrates that first PCRA counsel rendered constitutionally ineffective assistance of counsel. That is, "counsel's representation 'fell below an objective standard of reasonableness,' and 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Strickland, 466 U.S. at 694.

Deficient Performance/Cause

Counsel's representation at, and immediately following, the July 21, 2008, evidentiary hearing during Mr. Smith's first PCRA proceedings fell below an objective standard of reasonableness and constitutes deficient performance under Strickland. Counsel unreasonably failed to recognize that trial counsel's testimony that the Commonwealth offered a plea to third degree murder, and Mr. Smith's vigorous assertion that no such offer had been communicated to him, provided the factual basis for the Sixth Amendment claim currently before this Court. Because

29

he apparently did not appreciate that the facts revealed at the hearing supported a ground for relief that had not been previously been raised, first PCRA counsel failed to competently examine trial counsel and to amend the PCRA to include an argument that, counsel's hearing testimony notwithstanding, Mr. Smith's right to effective assistance of counsel during the plea bargain stage were violated.

That trial counsel claimed to have communicated the Commonwealth's plea offer does not justify first PCRA counsel's failure to pursue the claim; nor does it render counsel's inaction reasonable.  Trial counsel's testimony fell well short of establishing that he provided effective representation, and PCRA counsel should have recognized that.  In fact, as discussed in Point I, even if he told Mr. Smith the Commonwealth had made an offer, his testimony reveals that he failed to provide Mr. Smith with sufficient information about the sentence that would be imposed under the offer for him to meaningfully evaluate it.  Reasonably competent counsel would have recognized the basis for the claim and understood that trial counsel's testimony did not refute it.[9]

---

[9] Even if first PCRA counsel concluded that trial counsel's testimony undermined the claim, without further exploration (including speaking with Mr. Smith), first PCRA counsel could not have reasonably concluded the claim was without merit.

30

PCRA counsel – either unaware or unconcerned about the import of the

testimony given the issues that were before the court at that juncture – missed the

red flags in trial counsel's testimony and, as a result, failed to effectively pursue

the claim that Mr. Smith's Sixth Amendments rights were violated by trial

counsel's failure to communicate a favorable plea offer.[10]  Counsel's failures

---

[10] Among the red flags was the fact that trial counsel did not recall the details of the offer and/or have any notes or correspondence to corroborate his testimony.  His proffered explanation for the lack of documentation – that his computer was stolen – didn't address why he had nothing in his file memorializing the details of the offer or his meetings with Mr. Smith.

Although it is clear from trial counsel's testimony that he talked at length with Mr. Smith about third degree murder, it is far from clear that those conversations involved a formal plea offer and were not limited to discussions about a potential defense and possible verdict. Indeed, based on trial counsel's testimony, wherein he consistently conflated his thoughts about a plea and possible trial defense, reasonable counsel also should have concluded that it was possible, if not likely, that trial counsel mistakenly believed his conversations with Mr. Smith about third degree murder included a discussion of a plea offer.[10] See App. 144-46, 151-53.

For example, trial counsel testified that, in response to the plea offer, Mr. Smith said, "I'm 63 years old, that's a life sentence." App. 145.  While this may have been a logical response to Mr. Leslie's suggestion that he pursue a voluntary intoxication/third degree murder defense at trial, after which Mr. Smith could expect to receive a sentence with a maximum of up to 40 years, 18 Pa.C.S § 1102(d), the statement makes little sense in response to a prosecution offer for an eight-year sentence.

31

resulted in the default of Mr. Smith's claim that trial counsel provided ineffective assistance during the plea bargain stage.

<u>Prejudice</u>

For the reasons argued in Point I, had first PCRA counsel pursued the claim that Mr. Smith was denied the effective assistance of counsel during the plea bargaining stage, there is a reasonable probability that the outcome of the first PCRA proceeding would have been different because the claim has merit.

## CONCLUSION

For all of the foregoing reasons, the appellant, Willie Smith, respectfully requests that this Court reverse the district court's denial of his petition for writ of habeas corpus and grant relief for the violation of his Sixth Amendment right to the effective assistance of counsel in connection with the Commonwealth's plea offer.

Respectfully submitted,

*/s/ Lisa B. Freeland*
Lisa B. Freeland
Federal Public Defender
Counsel for Appellant, Willie Smith

**CERTIFICATE OF MEMBERSHIP IN BAR**

I, Lisa B. Freeland, hereby certify that I am a member of the Bar of this Court.

*/s/ Lisa B. Freeland*
Lisa B. Freeland
Federal Public Defender

**CERTIFICATE PURSUANT TO FEDERAL RULE OF
APPELLATE PROCEDURE 32(a)(7)(C)**

I hereby certify that the within Brief for Appellant contains 6,047 words and 628 lines, exclusive of title page, Table of Contents, Table of Authorities and certificates of counsel; and therefore complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

*/s/ Lisa B. Freeland*
Lisa B. Freeland
Federal Public Defender

**CERTIFICATE OF IDENTICAL TEXT**

I, Lisa B. Freeland, hereby certify that the text of the E-Brief and Hard Copies of the Brief for Appellant filed on behalf of Willie Smith at No. 12-3595 are identical.

*/s/ Lisa B. Freeland*
Lisa B. Freeland
Federal Public Defender

34

# CERTIFICATE OF VIRUS CHECK

I, Lisa B. Freeland, hereby certify that a virus check was performed on the Brief for Appellant filed on behalf of Willie Smith, Appellant, filed at No. 12-3595 using Symantec Endpoint Protection v12.1.5337.5000 software.

*/s/ Lisa B. Freeland*
Lisa B. Freeland
Federal Public Defender

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Brief for Appellant was mailed via United States Mail to the following:

Thomas Minett, Esq.
Lawrence County Office of District Attorney
430 Court Street
New Castle, PA 16101

*/s/ Lisa B. Freeland*
Lisa B. Freeland
Federal Public Defender

Dated:  February 9, 2015